**ALLEN & SCOTT, Inc., v. STAHL et al.**

No. 27325.    Jan. 11, 1938.

William F. Tucker and William H. Martin, for plaintiff in error.

Hunt & Eagleton, for defendant in error H. C. Stahl.

PHELPS, J. Allen & Scott, Inc., was the owner of an apartment building in the city of Tulsa and was personally liable for the mortgage debt thereon. Allen & Scott, Inc., conveyed the property to H. C. Stahl, and the present controversy is whether Stahl thereby assumed and agreed to pay the balance remaining due on the mortgage debt, or, on the other hand, merely bought the equity of Allen & Scott in the property without assuming personal liability on the debt. Stahl has never resisted the right of the mortgagee to foreclose the mortgage. In this appeal there is no argument between Stahl and the mortgagee. When the mortgagee filed foreclosure action Allen & Scott, Inc., filed a cross-petition against Stahl asking that personal liability be adjudged against him in the amount of the mortgage debt, attorneys fees, etc. All parties waived a jury trial, and the trial judge, after hearing and considering much evidence, ordered foreclosing of the mortgage and the entering of a money judgment against Allen & Scott, Inc., and others, but absolving Stahl from personal liability on the mortgage debt. The failure of the trial court to hold Stahl personally liable is the cause of this appeal by his grantor, Allen & Scott, Inc.

Stahl lived in Ohio, but owned considerable real estate and other interests in the city of Tulsa, Okla. He made occasional visits to that city, but his rental collections and interests there were mainly attended to by his agent, Makemson, whom he had brought there for that purpose from Ohio. Makemson possessed no power of attorney and his activities were mainly the collection of rents, keeping the property occupied, seeing to repairs and keeping Stahl informed of events, affairs, and conditions.

Stahl owned two houses and a vacant lot in Tulsa which were free and clear of all encumbrances. Allen & Scott, Inc., owned an apartment building encumbered by the mortgage in question, in the sum of $15,500, with a balance due thereon of $13,250. Pursuant to the efforts of Allen & Scott's broker, Gilmore, a written contract of exchange of these properties was brought about. The contract does not indicate that any particular, **specific** money valuation, appraisement, or consideration was in the mind of either party as to his or the other's property; the deal being simply an exchange of property.

In the written contract, which was signed

by Stahl personally, there was no agreement by him to assume or pay the mortgage on the apartment building which Allen & Scott, Inc., was to convey to him. Of course he took the property **subject** to the mortgage, and must have known that unless the mortgage should be paid he would lose the property, but that is not the question before us. He testified at the trial that the express understanding between the parties at the time the contract was signed was that he was not to assume personal liability for the mortgage debt, and that he was to receive the property exactly according to the terms of the contract:

"Subject to balance on loan of record of $13,250 'and except all general and special taxes due and payable after February 2, 1931."

Stahl further testified that Gilmore and Makemson on that occasion, in order to encourage him to make the deal, emphatically pointed out to him that he would not be personally liable on the mortgage and that if he would sign the contract he would not be assuming and agreeing to pay the mortgage.

Gilmore, Allen & Scott's broker, testified that he understood that Stahl was to assume the mortgage, and that when he first mentioned the possibility of the exchange to Makemson it was on that basis. However, he did not testify that any such arrangement was entered into between the parties at the time of the signing of the contract, either orally or otherwise, nor did he testify to any such representation ever having been made by Stahl. Mr. Allen, of Allen & Scott, Inc., testified that his understanding with the broker (not Stahl) was that Stahl was to assume and pay the debt. The result is that Stahl's testimony to the effect that there was no such collateral agreement existing between him and Allen & Scott, at the time of signing the contract, was undisputed by any witness. However, we have not overlooked certain letters afterward written by Stahl to his agent, which may have served as the basis for contrary circumstantial inference, had the trial judge, sitting as the trier of the facts, seen fit to construe them in that light. This ends the statement of facts in so far as the written contract is concerned.

Within two hours after the contract was signed, Stahl's train for Ohio was to leave. He instructed his agent, Makemson, to close the transaction exactly in accordance with the contract. He told the broker, Gilmore, that Makemson would close the deal, or complete the transaction. Gilmore testified that Stahl told him that whatever Makemson did would be all right. Makemson having died before the trial, his testimony was not available. Some time would elapse before the respective abstracts could be examined, and we think the trial judge was warranted in believing that not only the actual limit, but also the apparent limit, of Makemson's authority was to attend to the details of performance of the contract which had already been made, not to alter or modify it or make any new contract for him. Stahl took the above-mentioned train for Ohio within less than two hours after he had signed the contract, and shortly after arriving in Ohio he sent to Makemson, for delivery at the proper time, a deed conveying to Allen & Scott the property which, under the contract, they were to receive from him.

Now there comes to light a fact to which the trial court may have attached considerable importance. At some time during these negotiations there ripened an understanding between Gilmore, the grantor's broker, and Makemson, the grantee's agent, that Makemson would share in Gilmore's brokerage fee. Gilmore himself testified that he split said fee evenly with Makemson. Unless the deal should become completed, there would be no fee. Stahl knew nothing of this unusual development. Its significance is apparent and should be remembered in connection with the facts hereinafter stated.

In due time there came the occasion for exchanging deeds. This occurred in the office of Allen & Scott, Inc., with Allen. Scott. Makemson, and Gilmore present. Stahl was in Ohio. Allen had inserted in the deed to Stahl, immediately following the covenant as to encumbrance, a provision whereby the grantee was to assume and agree to pay the mortgage in question. It further 'appears that Makemson then and there insisted that the amount of the balance remaining due on the mortgage be stated in the deed, and that this was done. Makemson took the deed, recorded it, and did not send it to Stahl. About seven months later Stahl discovered the above-mentioned provision of 'assumption in the deed, discharged Makemson, and wrote Allen & Scott that he would not be bound by it.

In appealing, the first proposition of Allen & Scott, Inc., as copied from the brief, is as follows:

"Under the evidence, R. L. Makemson was fully authorized, as the agent of Stahl, to accept the deed containing the provision by which Stahl 'assumed and agreed to pay the mortgage debt."

This proposition is erroneous. Certainly Makemson was authorized to accept the deed, but no authority is cited holding that agency for acceptance of a deed includes as a matter of law the power to alter the principal's contract pursuant to which the deed is delivered and accepted. We doubt that any such authority can be found. If the plaintiff in error then seeks to prove its case by the establishment of an oral contract of assumption, through the medium of the agent, it is at once confronted with the emphatic testimony of Stahl to the contrary of its contentions as to the actual limits of the agent's authority, and the weakness of its own evidence as to the apparent limits of that authority. Even if the trial judge believed Gilmore's testimony that Stahl told him, just before leaving for Ohio, that whatever Makemson did would be all right, was it thereby to be inferred that the agent possessed the power to undo or materially alter the written contract which Stahl had just made, which contract, we must remember, was signed by Stahl only after the assurance of this same witness that it would not obligate him personally on the mortgage? Assuming, for the sake of reasoning, that the grantor could take advantage of such a supposed statement made to the broker, and assuming that the statement was made, still it would not follow that such a general statement was meant to rescind the immediately preceding understanding that Stahl was not to assume personal liability, but for which representation he would not have signed the contract. It must be borne in mind that Stahl testified that this same witness, and his agent Makemson, had just induced him to sign the contract by pointing out that under it he was not to assume personal liability. Clearly the trial judge was correct in thus not being persuaded that the agent possessed the apparent or implied authority to bind Stahl, orally, to the assumption of a thirteen thousand dollar obligation.

The second proposition of plaintiff in error depends upon the soundness of the preceding one, and therefore need not be discussed. In the third proposition it is pointed out that it is a fundamental principle of agency that notice received or knowledge acquired by an agent in the course of his employment is imputed to the principal, and from this it is argued that Makemson's knowledge of the assumption clause in the deed should be imputed to Stahl. There are many limitations upon and qualifications of this general rule (2 Am. Jur. 291), and it is not one of universal application (3 C.

J. S. Agency, 196). For instance, the following from 2 American Jurisprudence, 292, is a fitting and sensible exception to the rule:

"Obviously, however, if the one receiving knowledge is the agent of the **other** party or of someone other than the alleged principal, the latter cannot be charged with knowledge."

The following is from 2 American Jurisprudence, 298:

"There is a well-established exception to the general rule that the knowledge of an agent is to be imputed to the principal in situations where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as where the agent acting nominally as such is in reality acting in his own business or for his own personal interest and adversely to the principal, or for any other reason has a motive or interest in concealing the facts from his principal."

It is undisputed that Makemson received half the commission, and that Stahl knew nothing of this. It is further undisputed that Stahl, immediately after signing the contract and before leaving for Ohio, instructed Makemson to see that the deed was exactly in accordance with the contract. The true situation is made even clearer by the fact that Makemson himself helped induce Stahl to sign the contract by representing that Stahl would not thereby become personally bound for the mortgage debt,— or so the trial court was authorized to believe from the evidence. And when Stahl learned that Makemson had accepted such a deed he discharged him. No reasonable person, with those facts confronting him, would be likely to infer that the agent communicated the information to his principal. Yet the rule is predicated entirely on that inference. Lacking a basis for the inference, and therefore lacking the inference, the rule does not apply.

The fourth proposition is this:

"Where an agent contracts for his principal in excess of his authority, the principal who, with knowledge actual or legally implied, accepts the benefits of such contract, thereby ratifies the same and is bound by the obligations thereof."

That is a good general statement of the law. It is of no application here, for (1) the evidence is overwhelmingly to the effect that the principal had no actual knowledge of the provision in the deed, and, when he did discover it, promptly notified the grantor that he would not be bound thereby, and (2) the knowledge cannot legally be implied

to him, by reason of the matters discussed in the proposition immediately above.

We have thoroughly considered the two remaining propositions. They do not involve any new question of law; as applied to the facts of the case, they do not justify a reversal, and need no discussion.

The judgment is affirmed.

RILEY, WELCH, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., BAYLESS, V. C. J., and DAVISON, J., absent.