NATIONAL LIFE & ACCIDENT INS. CO. v. HEARN.

No. 33776.   March 6, 1951.

Rehearing Denied Jan. 29, 1952.

*240 P. 2d 83.*

J. M. Peebles, Nashville, Tenn., Horsley, Epton & Culp, Wewoka, Jack Durland, and Embry, Johnson, Crowe, Tolbert & Shelton, Oklahoma City, for plaintiff in error.

Allen G. Nichols and Walter Billingsley, Wewoka, for defendant in error.

DAVISON, J.   This is an action wherein the plaintiff, Harry L. Hearn, as beneficiary, seeks to recover from the defendant, National Life & Accident Insurance Company, upon the policy of insurance of the face value of $500 issued upon the life of his 17-year old daughter, Colleen M. Hearn. The parties will be referred to as they appeared in the trial court.

Plaintiff's petition contains the usual averments, including that of the corporate existence of the defendant, the issuance of the insurance policy by defendant, a photostatic copy of which was attached as an exhibit, the payment of weekly premiums and the death of the insured January 26, 1947. The policy was dated September 9, 1946. Defendant

answered by way of general denial and then admitted all the essential facts set out in the petition, but specifically alleged the invalidity of said policy contract because of the serious bodily infirmities and disease of said Colleen Hearn at the time of the issuance of the policy, in contemplation of the following provision therein:

"(5) Effective Date — This policy shall take effect on the Date of issue, provided the insured is then alive and in sound health, but not otherwise."

Defendant then tendered a return of all premiums paid. The reply was a denial of all affirmative defenses and, in addition, alleged that, if insured was not in sound health at the time of the issuance of said policy, the defendant had waived the requirement of that provision above set out because, prior to the issuance thereof, a full and complete disclosure of her condition was made to defendant's agent and defendant was now estopped to deny liability. Then followed a refusal of the tender of return of premium payments.

Upon the issues thus formed the case was tried to a jury. The evidence of plaintiff was to the effect that, late in the summer of 1946, defendant's agent contacted plaintiff several times in an attempt to sell him life insurance on various members of his family. Plaintiff discussed at length with the agent the fact that Colleen was born with a leakage of the heart and also told him of her examination or check-up at Crippled Children's Hospital in 1942. He then asked the agent if a policy could be written upon her life and was informed that the matter would have to be discussed with agent's superior. Several days later, the agent returned to plaintiff seeking the name of the physician who had delivered the insured (the doctor was then deceased), and again told plaintiff that the supervisor would again have to be consulted. After learning that it was impossbile to discuss her condition with the doctor, he again conferred with his supervisor (Brady). The agent later told plaintiff he had been advised to use his judgment about writing the policy.

On the evening of August 19, 1946, the agent came to plaintiff's home and there filled out the applications for three insurance policies including the one here sued upon. Plaintiff testified the agent told him that if any of the insureds died within one year the company could contest the policy if it desired. The agent wrote the answers to all questions in the application. Plaintiff did not read the applications at the time they were signed. Colleen Hearn, the insured, was called in and without reading the application, signed the same. Therein, in answer to the question, "Are you in good health?", the agent had written "Yes" and in answer to the question, "Have you ever had heart disease . . .?" the agent had written "No." the policy was issued and delivered without medical examination of insured. Insured died as a result of her congenital heart condition January 26, 1947.

The defendant's agent testified to the facts surrounding the making of the application substantially the same as plaintiff, except that he further testified that at the time he was filling in the application, he told plaintiff he would have to fill in the answers to the questions, showing Colleen had never had heart trouble or the defendant would not issue the policy. (This was denied by plaintiff.) That he did it because he was a little overanxious for business. He also testified that his superior or supervisor, after the matter was explained, told him to use his own judgment and if he thought the girl had a chance to live several years to go ahead and write it. He further testified that he told plaintiff that, if the girl died within a year, an investigation would be made, and if it was then discovered she had died from a heart ailment the insurance would not be paid. Plaintiff's testimony on this point was that the agent told him the defendant would probably contest the payment on any of the three policies

if death occurred to any of the insureds within the first year.

The jury returned a verdict in favor of plaintiff for the face amount of the policy. Defendant has appealed from the judgment rendered thereon, urging several propositions for reversal. They will be discussed in the order presented.

At the outset it is well to see definitely the question for determination here. Defendant's answer raised the sound affirmative defense of ill health of insured at time of delivery of the policy which, standing alone, would have avoided it. The reply of plaintiff then raised the propositions of waiver and estoppel as affirmative responses to the answer. Thus, when the trial commenced, the burden was upon plaintiff to make out a case founded upon the affirmative matters in the reply as supplementary to the allegations of the petition.

As the evidence unfolded the proposition relied upon by defendant and hereinafter discussed became the gist of the action. If false statements were written into the application by a soliciting agent with full knowledge of the state of health of insured, the defendant is estopped from setting them up unless the facts come within the exception to such rule as is hereinafter discussed. If the defendant issued the policy and subsequently accepted the premiums with notice, either actual or imputed, because of the agent's knowledge, a waiver was effected. In either of these events plaintiff would be entitled to recover, but the foundation of each is knowledge of or notice to the insurer. The early case of Federal Life Ins. Co. v. Whitehead, 73 Okla. 71, 174 P. 784, contains an extended discussion of the differences between estoppel and waiver and also states several principles here controlling. There it was said that:

"It is contended by the defendant that the policy in this case is void because it was not delivered to the insured while he was in good health, the policy itself providing that it must be so delivered. But that provision of the policy, like other of its provisions, made for the benefit of the company, could be waived. . . . With the knowledge in possession of the state agent of the physical condition of the insured, which we also impute as notice to and knowledge of the defendant the knowledge coming to the agent while acting within the scope of his authority, and with the direct information as to the condition of the health of the insured as stated above in possession of the defendant, it continued to keep the policy in force and binding, and continued to retain the premium for the first year paid upon the policy, and never made any effort to return the premium or to cancel the policy, and never took any steps to do so, until after suit had been brought to enforce collection of the policy; and in its answer filed on the 18th day of May, 1915, we see for the first time any effort made or steps being taken by the defendant to tender back the premium paid, and we are of the opinion, under such circumstances, the offer to return the premium comes too late."

Plaintiff's good faith in the entire transaction is not questioned, either in the pleadings or otherwise. Defendant's position is founded upon the proposition that:

"The rule that knowledge of an agent is imputed to the principal does not apply in situations where the circumstances are such as to raise the presumption that he would not communicate such knowledge to the principal." Allen & Scott, Inc., v. Stahl et al., 181 Okla. 527, 75 P. 2d 204.

We do not think the position is tenable herein, in view of the testimony.

The following rule of law is also found in the case of Federal Life Ins. Co. v. Whitehead, supra, and has long been adhered to in this jurisdiction:

"That if the insured makes truthful disclosures concerning a material matter, but the agent, while acting within the scope of his authority, either carelessly or fraudulently writes a false answer, the same becomes the act of

the company, and it is estopped from asserting such falsity in its behalf in an action wherein it is involved."

This last-cited case was quoted from at length and followed in the case of Knights and Ladies of Security v. Bell, 93 Okla. 272, 220 P. 594. In these early cases it did not appear from the record that the applicant knew that false answers had been written into the application by the agent of the insurance company. In the case of Security Benefit Ass'n v. Green, 103 Okla. 284, 229 P. 1061, the agent, after the insured had made a full disclosure of a prior attack of influenza, filled in the answers to questions in the application stating "no" to the inquiry as to whether or not applicant had suffered from such disease. The agent gave as his reason therefor that there was no necessity of showing the facts in the application. This court held the above rule to be controlling and in addition made the following statements which is similarly applicable to the instant case:

"The question as made by the answer of the defendant, and the plea of estoppel by the plaintiff, created an issue of fact for submission to the jury. The issues of fact were fairly submitted to the jury and the verdict of the jury for plaintiff is amply supported by the testimony."

In the much later case of Security Ben. Ass'n v. Glenn, 180 Okla. 64, 67 P. 2d 790, the rule was applied in a case where, upon advice of the agent after full disclosure, inaccurate answers were inserted in the application by the insured personally.

Many of the above cases among others are cited and discussed in the case of Atlas Life Ins. Co. v. Sullivan, 172 Okla. 595, 52 P. 2d 28. Therein it was held:

"In the absence of fraud or collusion between the soliciting agent and the applicant, which must be pleaded and proved, the company is bound by the information furnished an agent by the applicant at the time of executing the application for insurance, whether or not the agent correctly answers the questions from the information furnished him."

A rather exhaustive discussion of the question with citation of numerous additional authorities is contained in the case of National Aid Life Ass'n v. Clinton, 176 Okla. 372, 55 P. 2d 781. The facts in these last two cited cases do not contain all the elements involved in the case at bar, but the rules of law there discussed are here equally applicable.

It is not the intent of this opinion to limit the effect of the rule of law relied on by defendant, as quoted, supra, if the facts of the case come within the sphere of its application. No fraud or collusion on the part of plaintiff herein was pleaded, proved or urged. Therefore, the general rule herein discussed is controlling, unless the circumstances are such as to raise a presumption that the agent would not communicate the knowledge obtained to his principal. The applicant made a complete and honest disclosure of all facts surrounding the present and past physical condition of his daughter. She had been born with a heart ailment. However, the record does not disclose that she had ever been treated by a physician for it unless it was by the one who attended her mother at the time of birth. Some four years prior to the application for insurance, she was admitted to Crippled Childrens Hospital for examination. All of these facts had been made known to the agent and, when plaintiff asked if a policy could be written for Colleen, he was informed that the agent would have to discuss the matter with his superior or supervisor. Later the agent returned to secure additional information to be taken to the supervisor. Can it be said that these admitted facts would raise a presumption that the information was to be withheld from the defendant? We think they would indicate the contrary. The only other testimony bearing on the point, and the only testimony that plaintiff knew what answers the agent had written to the questions

contained in the application, was that of the agent who testified that at the time of inserting the erroneous answers in the application, he told plaintiff that he was doing so because the insurance would not be written otherwise. Plaintiff testified that he did not remember such statement and would have remembered it if it had been made. But, assuming that such statement had been made, there is no evidence which would tend to prove that the information concerning insured's condition of health had not already been passed on to the defendant's proper officers by the agent's superior or supervisor, who, so far as plaintiff was informed, had all the information given the agent about the situation. There was a weak attempt on the part of the defendant to prove that the agent was acting for his own benefit in that he was attempting to do more business and receive more commissions, but that situation always obtains and is of no consequence in determining the question presented.

The following statement, contained in the case of Atlas Life Ins. Co. v. Sullivan, supra, is the established law in this jurisdiction and is decisive of the instant case:

"We hold that information received by the agent of the company when writing the application is imputable to the company, and it is bound thereby, and an insurance company cannot escape liability on a policy in such a case by showing that its agent wrote different answers to the questions propounded in the application, and then proving that such different answers are untrue. It is the duty of the company's agent to furnish the company with the truth, and if its own agent refused to do so, in the absence of collusion and fraud with the applicant, which is not an issue in the case at bar, the insurance company is bound by the knowledge received by such agent.

"The third question must be answered in the negative for the reason that the question of intent to defraud, bad faith, and concealment of facts is a question for the jury in this state, and the jury resolved that question against the defendant and in favor of the plaintiff. The evidence not only fails to show collusion between the soliciting agent and the applicant, or the plaintiff herein, but no such contention is made by the defendant. On the other hand, the evidence is ample to support the contention of the plaintiff that he made full disclosure to the defendant through its soliciting agent of the history of the health of the deceased."

Defendant urges error of the trial court in giving certain instructions to the jury and in refusing to give others that were requested. Such contention is founded upon the theory that the insurance policy was unenforceable if, at the time of issuance, the insured was in unsound health. As explained above, the case was tried upon issues going beyond that theory, to wit: That a full and complete disclosure of insured's actual condition of health was made to defendant's soliciting agent and that because of the issuance of the policy subsequent thereto, the defendant had waived and was estopped from asserting the defense of a violation of the restrictive provisions. These issues were joined by the answer and reply. Upon trial, defendant sought to escape the effect of an estoppel by relying upon the proposition above discussed. Although the instructions were not as exhaustive as would probably have been required had request been made for additional proper ones, they were, nevertheless, sufficient to fairly present the actual issues to the jury. Two instructions were requested and refused, which, in substance, instructed the jury to find for defendant if the facts found clearly indicated to the plaintiff that the agent would not inform the defendant of insured's condition of health, or if plaintiff had knowledge that the defendant would not have issued the policy had it known of the unsound health of insured. These requested instructions entirely ignore the uncontradicted evidence that the agent had, previous to taking the application, passed the information on to his superior, so far as plaintiff knew. Therefore, the requested instructions were not proper without reformation

and the trial court committed no error in refusing to give them. Magnolia Petroleum Co. v. Barnes, 198 Okla. 406, 179 P. 2d 132.

Defendant also contends that the trial court erred in refusing to allow defendant the right to open and close the argument of the cause. This position is not tenable. The issue tried was that of estoppel set forth in plaintiff's reply. The burden of proving the same was, therefore, upon plaintiff and he had the right to open and close the argument. Cowen v. T. J. Stewart Lumber Co., 177 Okla. 266, 58 P. 2d 573.

The judgment is affirmed.

ARNOLD, C. J., LUTTRELL, V. C. J., and JOHNSON and O'NEAL, JJ., concur. WELCH, CORN, GIBSON, and HALLEY, JJ., dissent.