INSTITUTE FOR BUSINESS PLAN-
NING, INC., a corporation,
Plaintiff,

v.

STANDARD LIFE & ACCIDENT IN-
SURANCE COMPANY, Defendant,

Raymond S. Smith, Intervenor.

Civ. No. 9445.

United States District Court
W. D. Oklahoma.

June 10, 1965.

John G. Hervey, and McClelland, Collins, Sheehan, Fauss, Bailey & Bailey, Oklahoma City, Okl., for plaintiff.

J. B. Beaird, and Carl Bagwell, Oklahoma City, Okl., for intervening plaintiff, Raymond S. Smith.

Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for defendant.

DAUGHERTY, District Judge.

In this diversity case plaintiff sues defendant for an alleged indebtedness represented by a series of purchase orders received by plaintiff for business planning services it produces and offers for sale. Legal fees are also sought by plaintiff. Plaintiff claims the balance due on said purchase orders is $28,106.26. These purchase orders were issued for the most part over a period from late 1959 to late 1960. Something over twenty purchase orders are involved. They were signed by one John D. Weller, for the defendant. He first signed as Assistant Vice President and later as Vice President. It appears that Weller was in the training department of defendant, along with two other co-equal employees, all of whom worked under the direct supervision of the President of defendant. Plaintiff asserts that these purchase orders are binding upon the defendant by virtue of the authority of Weller to bind the defendant. Plaintiff does not rely upon actual express authority from defendant to Weller to execute these purchase orders, but relies upon actual authority by implication, apparent or ostensible authority, ratification and estoppel.

The defendant denies liability on the purchase orders sued on for the reasons that Weller had no authority of any kind from defendant to execute the same, and further that Weller and one Raymond S. Smith, the salesman for plaintiff involved in all of these sales and purchase orders, were guilty of misconduct amounting to a breach of their fiduciary relationships and a fraud upon the defendant, and the plaintiff as well, to obtain unauthorized and improper personal benefits to themselves in connection with these purchase orders.

The Court allowed said Raymond S. Smith to intervene herein. Smith claims he is entitled to his prescribed commissions from plaintiff on all of the purchase orders involved herein. Smith also seeks to recover his legal fees. In allowing this intervention, the Court confined Smith to any commissions which may be due him only on the purchase orders involved herein and will not consider commissions due on any purchase orders which are extraneous to the plaintiff and defendant.

The plaintiff then filed a counterclaim against Smith asserting the overpayment of commissions by plaintiff to Smith and asking for judgment against Smith for such overpayment. At the trial the plaintiff and intervenor Smith stipulated to the amount of commissions due the intervenor on the purchase orders involved herein provided same are upheld, and also the amount of overpayments by plaintiff to the intervenor in event the intervenor is entitled to no commissions on the purchase orders here involved, this latter stipulated figure being $4,012.-87.

Under the above issues the Court received the evidence of the parties. It appears, and the Court finds, that Weller was in the training department of defendant, first with the title of Assistant Vice President and then Vice President, training. The evidence establishes that he did not have actual express authority from defendant or any officer of the defendant to specifically execute the several purchase orders involved herein. The Court finds from the evidence that no officer of defendant had knowledge of these purchase orders until sometime during the first part of 1961. The intervenor Smith was a salesman for the plaintiff and in obtaining the said purchase orders only contacted Weller with reference thereto in so far as the defendant is concerned. The evidence is in conflict about some minor contacts by Smith with other officials of defendant late in the matter (March,

1961) and with reference to an attempt to clarify the situation, but the Court finds that these contacts were of no significance with reference to the issues herein, and finds that in obtaining the purchase orders involved herein the said Smith only contacted Weller, as far as the defendant is concerned. It appears that all mail and shipments from plaintiff to defendant were sent to the attention of Weller. An official of plaintiff, a Vice President, made several trips to Oklahoma City with reference to the defendant's account but never on any of these trips contacted anyone representing the defendant except Weller. It further appears that the general duties of Weller involved holding training schools for selling agents and working with these selling agents of defendant in the field. The evidence discloses that the defendant or its selling agents had made a few small purchases from plaintiff over the years before the Weller purchase order transactions and the same had been promptly paid for. After the purchase orders signed by Weller were received by plaintiff the account of defendant reflecting the same became delinquent and past due. While the account was in past due status, these several trips to Oklahoma City were made by a Vice President of plaintiff, some of which were solely for the purpose of looking into this account. The plaintiff was seeking payment both before and at the time of these said trips. Many excuses for nonpayment were given plaintiff by its salesman Smith and by Weller. These involved alleged accounting difficulties, fixing credits on binders, and confusion about purchase orders and deliveries. At the first Oklahoma City meeting between the officer of plaintiff and Smith and Weller they arrived at a current balance due plaintiff and plaintiff agreed to forego collection for some material covered by outstanding purchase orders. This agreed balance due was in the amount of $3640.75 and was covered by several purchase orders. The plaintiff was insistent upon receiving the amount so agreed upon. Weller then falsely represented to the President of defendant that he wanted to purchase ten sets of material from plaintiff for ten of defendant's selling agents representing a total cost of $3640.75, and that the ten selling agents of defendant would repay defendant for the same or one-half thereof. On this basis the President of defendant authorized the issuance of a check for $3640.75 to plaintiff, which was delivered to plaintiff by Weller. The amount of this check coincided with the aforementioned current balance arrived at by Smith and Weller with the official of the plaintiff at Oklahoma City. There was no purchase order issued by Weller representing the exact amount of this check or covering the said ten sets of plaintiff's material. But there were a half dozen or more purchase orders in the hands of plaintiff at the time totalling over $15,000.00. The plaintiff applied this check to several of these Weller purchase orders.

The evidence further discloses that Weller gave a $35,000.00 purchase order for defendant to the Wilkes Printing Company for binders suitable to receive the materials of plaintiff. Connected with this purchase order transaction and on the same date thereof Wilkes entered into a written agreement with Smith wherein Wilkes would deliver the binders to Smith and also the difference for each binder delivered between what Wilkes would ordinarily charge for the same and a much higher amount charged for same by Wilkes under the Weller purchase order to Wilkes. In other words, the prices specified in the said $35,000.00 purchase order to Wilkes were padded or inflated to the knowledge of Smith, Weller and Wilkes. Neither plaintiff nor defendant had any knowledge of this side activity until it was discovered by chance by an officer of defendant in September, 1960. Weller had knowledge of this Wilkes-Smith agreement and himself advanced personal money to Wilkes which went to cover binders delivered by Wilkes to Smith and for advances of money made by Wilkes to Smith. As a further part of this transaction Smith

had his lawyer prepare a joint venture agreement between himself and one Dr. F. C. Buffington covering an operation whereby the joint venture would receive from Wilkes the above mentioned price differential on the binders and insert the material of plaintiff in the binders obtained from Wilkes.

Weller not only had knowledge of this joint venture, but a letter from Smith to Weller clearly shows that Weller was a silent partner or beneficiary under this joint venture operation. In addition, Weller put some of his own money in the joint venture operation.

Smith also had his lawyer prepare a proposed One Million Dollar contract between plaintiff and defendant covering a most involved arrangement regarding the purchase by defendant of this amount of plaintiff's material and certain servicing thereof by Smith, for which he would be paid by defendant. This proposed contract, which is in evidence, is so fantastic, confusing and complex that the Court must agree with plaintiff's Vice President that it must be classified as being ridiculous. Smith furnished a copy of this proposed contract to plaintiff prior to a May, 1960, trip by one of plaintiff's Vice Presidents who brought the contract with him and discussed the same with Smith and Weller but refused to discuss the same with Smith's attorney. This officer did not contact any of defendant's officers about this proposed agreement except Weller. The defendant had no knowledge of this proposed Million Dollar contract, never authorized its preparation, was never contacted about it by anyone and learned of it for the first time when this litigation arose.

■■ As stated above, an official of defendant by chance learned of the Wilkes purchase order for $35,000.00 worth of binders and reported it to the President of defendant. The President then called Wilkes in, saw the purchase order and denied any company liability on the same. The President of the company then called Weller in and on the basis of the Wilkes purchase order placed Weller on suspension. The evidence is not too clear about whether or not the President of defendant at this time learned of Weller's issuance of unauthorized purchase orders to plaintiff. The President denied it in his testimony at the trial. Weller testified in his deposition that he didn't divulge the full extent of his unauthorized activities until after Christmas. With the burden on this point being on the plaintiff the Court must conclude that the evidence fails to establish knowledge on the part of the President at this time of the unauthorized purchase orders to plaintiff. The President of defendant testified that he learned for the first time of the purchase orders to the plaintiff sued on herein when large amounts of plaintiff's material began stacking up in the defendant's mailing room. This was during the first part of 1961. The defendant then notified the plaintiff that it had learned of the Weller purchase orders; that they were unauthorized; that the only authority Weller had to buy anything from plaintiff was the ten sets of material costing $3640.75, for which a check had been authorized and issued, and further that defendant would not honor any of the Weller purchase orders. The defendant also requested plaintiff to stop sending the materials ordered by Weller. Weller left the employment of the defendant. Smith left the employment of plaintiff. Wilkes never attempted to enforce its purchase order against the defendant for the $35,000.00 worth of binders.

The evidence further discloses that plaintiff had no knowledge of the Wilkes-Smith contract or the proposed joint venture agreement between Smith and Dr. Buffington or Weller's interest therein and would have disapproved this sort of operation by its agent. The evidence likewise discloses that the defendant had no knowledge of the Weller purchase order to Wilkes for $35,000.00 worth of binders until the same was discovered by chance nor authorized the same and had no knowledge of the Wilkes-Smith agreement or the proposed joint venture agree-

ment between Smith and Dr. Buffington shared in by Weller, and would have disapproved all such activities if known.

With reference to the plaintiff's claim that Weller possessed implied authority from the defendant to bind it to the several purchase orders involved herein, the Court believes that American Jurisprudence has defined and explained this type of authority in a very commendable way in 3 Am.Jur.2d, p. 472, Agency, Sec. 71. This section is set out in full as a footnote below.[1]

 In view of the foregoing factual findings made by the Court and the legal characteristics of the doctrine of implied authority, as reported in American Jurisprudence, supra, the Court finds that Weller did not possess implied or incidental authority from the defendant to bind it to the purchase orders sued on herein and as well the pur-

chase order for the binders to Wilkes Printing Company. It is interesting to note that implied authority is characterized in brief as actual authority circumstantially proven which the principal is deemed to have actually intended the agent to possess. In this case the Court specifically finds that the defendant at no time intended Weller to have the authority to bind defendant for the purchase orders sued on herein. There was no manifestation from the defendant that Weller had the authority to bind defendant by the purchase orders involved, or that they were a necessary and reasonable implication of authority in order to effectuate that authority expressly conferred on him. The only possible manifestation of the defendant found in the evidence is the authority granted by the President to issue the check to plaintiff in the sum of $3640.75,

---

1. "71. Implied and incidental authority.

The actual authority of an agent may be, and frequently is, implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question. The implied authority of an agent is to be distinguished from his apparent authority, and may be characterized in brief as actual authority, circumstantially proven, which the principal is deemed to have actually intended the agent to possess. Such implied authority may arise independently of any express grant of authority, as from some manifestation from the principal that the particular authority in question shall exist in the agent, or it may arise as a necessary or reasonable implication in order to effectuate other authority expressly conferred. Implied authority embraces authority to do whatever acts are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent. Also, in the case of a sudden emergency or unforeseen situation arising after the authorization is given and not provided for in the agency agreement, the agent, if he cannot communicate conveniently with the principal, has the implied power to take such steps as he may deem necessary to protect the interests of his principal.

The implied and incidental authority of an agent is not unlimited, however. It may not be extended beyond its legitimate scope, and should be deemed to include only such powers as are practically indispensable and essential in order to carry out the duties actually delegated to the agent. In order that an implied or incidental authority may exist, it must appear that the act to be done is proper, necessary, or usual in order to promote the duty or to carry out the purpose expressly delegated to the agent; it is not sufficient that the act of the agent is advantageous to or convenient for his principal, or even effectual in transacting the business in which he is engaged. The incidental authority of an agent is limited to those acts which are of like kind with the acts he is expressly empowered to do, and from which the authority is implied, and acts which are not in the ordinary course of the business which the agent is employed to transact, especially those which are so unusual, remarkable, or adverse to the interests of the principal as to arouse the inquiry of a man of average business prudence, do not come within the scope of the implied powers. Furthermore, an agent will never be deemed by implication to possess powers which could not be exercised by the principal himself if he were acting personally, nor can the authority to do an illegal act or an act that is contrary to sound public policy be implied from the authority given to do a lawful act. However wide the scope of an agency, it cannot be inferred that it embraces as an incident an authority to obtain results by means of fraud."

as above mentioned. This check was obtained by Weller from the defendant on false misrepresentations and in furtherance of a fraudulent scheme. He misrepresented the truth to the defendant in obtaining the check and with the check Weller was able to pursue his improper activities as far as his employer was concerned with reference to the binders and the personal profit he intended to gain therefrom. Furthermore, the Court does not find that under the express authority of Weller there existed the implied authority to make the purchases involved as being incidental to or necessary or usual or proper to accomplish or perform his express authority which essentially was the conduct of schools for the selling agents of the defendant. Moreover, these purchases cannot be classified as being indispensable and essential in order for Weller to carry out those duties actually delegated to him by the defendant. It is, of course, immaterial that the purchase of such material by Weller could have proven advantageous or beneficial to the defendant. The Court also finds that the purchase of this vast quantity of material at a very sizeable figure under all the circumstances in this case must be classified as being so unusual, remarkable and questionable as to the interests of the defendant so as to arouse the inquiry of any man of average business prudence. In addition, the Court specifically finds that the agent of plaintiff had full knowledge of the fact that Weller was exceeding his authority as an agent of the defendant in issuing the purchase orders sued on herein. And finally, the purchase orders sued on herein were issued by Weller as a part and parcel of his over-all improper and fraudulent activities against his employer, and for that reason cannot be found to have been impliedly or incidentally given to him by defendant.

With reference to the matter of Weller possessing apparent authority from defendant to execute said purchase orders, the application of such doctrine depends upon the principal knowingly permitting the agent to exercise such authority or the principal holding out the agent as possessing such authority. See 3 Am.Jur., 2d, Section 73, Agency, page 475. In order to establish that an agent had the apparent authority to do an act or acts in question, there are certain necessary prerequisites, as follows: (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority, (2) that the third person knew of the facts and, acting in good faith, has reason to believe, and did actually believe that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act or acts done by the agent does not bind the principal. See 3 Am.Jur.2d, Section 75, Agency, pages 477, 478.

The plaintiff relies upon apparent authority in this case on the basis of Weller being first an Assistant Vice President and then a Vice President, training, of the defendant and the $3640.75 check received from defendant, as above explained. To the contrary, the defendant relies upon an absence of evidence that the defendant knowingly permitted Weller to execute purchase orders without authority or held Weller out to anyone as an agent possessing authority to execute purchase orders on behalf of the defendant. The defendant also relies upon the fact that Weller had no purchase order authority except as specifically approved by the President under whom he worked. In addition, the defendant attacks the claimed apparent autority of Weller on the premise that the plaintiff, through its agent Smith, was not acting in good faith in connection with the authority of Weller to bind the defendant by executed purchase orders and that the plaintiff, again through its local agent Smith, had full knowledge of a specific lack of authority on behalf of Weller to execute these purchase orders, and the same would not have been executed except to further the

claimed fraud, breach of fiduciary relationships, misconduct and scheme of the agents, Smith and Weller, to derive personal benefits from the employers involved through the Wilkes binder purchase and related contracts pertaining thereto, all of which are founded upon and intermingled with the purchase orders sued upon herein.

The Court is of the opinion and concludes that both contentions of the defendant with reference to the claimed apparent authority of Weller are with merit and must be adopted under the evidence and law involved with reference to this particular point. The Court finds that the defendant did not knowingly permit Weller to exercise authority to execute purchase orders on its behalf to the plaintiff with the sole exception of a purchase order to be covered by and paid by the said authorized check in the amount of $3640.75. Actually, in this particular such an authorized purchase order was never in fact issued by Weller covering specifically the ten sets for the figure of $3640.75. Otherwise, the evidence is clear that the defendant did not at any time knowingly permit Weller to exercise the purchase order authority involved herein or hold him out as possessing such authority. The only activity which could be said to form the basis of apparent authority is the $3640.75 check, and the Court finds that this check was obtained from the defendant by Weller in a fraudulent manner and for a fraudulent purpose and that the plaintiff's own agent was involved in this fraud and had knowledge that the check so obtained and forwarded to plaintiff was tainted with the fraudulent activities of the two agents.

An even stronger reason why apparent authority cannot be found or upheld in this case had to do with the second prerequisite as above set out. This is a requirement that the plaintiff must be found to have acted in good faith in connection with the transaction involved. In this connection, the Court finds that the plaintiff is bound by the knowledge and the bad faith of its agent Smith regarding the Weller purchase orders and the fraudulent scheme of which they formed a part. In suing on these purchase orders the plaintiff ratifies and adopts all of its agent's activities related thereto. 3 Am.Jur.2d, Agency, Section 174, page 559. Thus, the plaintiff is charged with knowledge of wrongdoings of Smith as heretofore pointed out and his knowledge of Weller's wrongdoings against his employer, the defendant. This is a necessary result when plaintiff seeks to recover on purchase orders obtained by Smith. 3 Am.Jur.2d, Agency, Section 172, pages 556 and 557 provides:

"A principal cannot avail himself of such acts as are beneficial to him and repudiate such as are detrimental, whether the ratification be expressed or implied. If a principal elects to ratify any portion of an unauthorized transaction of his agent he must ratify the whole of it; and if he ratifies any part of the transaction, the result is that he ratifies the whole transaction. It is, accordingly, universally held that where an agent exceeds his authority in making a contract, the principal cannot ratify and accept that part which is good and repudiate that part which is bad, or 'take the rose without the thorn.'"

Also see Holmes v. McKey, (Okl.1963), 383 P.2d 655. This same principle, however, does not apply to or work against the defendant with reference to Weller's wrongdoings since the defendant has not adopted his actions but rather has repudiated them. The case of Allen & Scott, Inc. v. Stahl, (1938), 181 Okl. 527, 75 P.2d 204, holds:

"The following is from 2 American Jurisprudence 298: 'There is a well-established exception to the general rule that the knowledge of an agent is to be imputed to the principal in situations where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as

where the agent acting nominally as such is in reality acting in his own business or for his own personal interest and adversely to the principal, or for any other reason has a motive or interest in concealing the facts from his principal.' "

Also see A. A. Murphy, Inc. v. Banfield (Okl.1961), 363 P.2d 942.

■ The Court finds that the presumption mentioned in the above cases applies here under the facts for the reason that Weller was acting in his own personal interest adversely ·to the defendant and had a clear motive and interest in concealing the facts from the defendant. In his deposition Weller admits that he concealed the facts regarding the purchase orders issued to plaintiff and his side deal with Smith from the defendant. .

■ To hold otherwise would be to allow the plaintiff the benefit of Smith's good acts on its behalf in obtaining purchase orders for its material but to not be bound by Smith's knowledge of Weller's lack of authority and Smith's acts of misconduct relating to these same purchase orders in his ventures connected therewith with Wilkes, Buffington and Weller. The Court recognizes that the plaintiff would not have approved nor become involved in this side venture set up by Smith, but the plaintiff as early as May, 1960, by virtue of the proposed One Million Dollar contract, had knowledge of Smith's interest in and proposal to become involved in this type of side activity in connection with the purchase by defendant of plaintiff's material. At this time the plaintiff took no steps to explore this proposed One Million Dollar contract with any of the principal officers of defendant nor to bring the contract to the attention of any such officials. At this time, under the evidence, the defendant had absolutely no information or knowledge about this proposed One Million Dollar contract and Smith's involvement in connection with the servicing of plaintiff's materials to be purchased by defendant. Thus, it would appear proper that the Court should find and hold that the plaintiff should be bound by any knowledge Smith possessed in connection with Weller's unauthorized activities on behalf of the defendant amounting to an improper exercise by Weller of authority to bind the defendant with large purchase orders. Moreover, to allow the plaintiff to recover herein under the doctrine of apparent authority, would permit the plaintiff to take advantage of the wrong of its own agent and likewise permit the agent to recover commissions in transactions involved with his own misconduct and improper motive.

■ With reference to the matter of ratification as claimed by plaintiff against the defendant on the basis of the $3640.75 check it is fundamental in applying the doctrine of ratification in an agency transaction that knowledge of the material facts must be brought home to the principal before he can be said to have ratified a previous unauthorized act. In other words, he must have been in possession of all the facts and must have acted in the light of such knowledge. 3 Am.Jur.2d, Section 173, Agency, page 557, provides:

"In order to bind a principal by ratification, assent, or acquiescence in prior acts of his agent or purported agent in excess of authority actually given, a knowledge of the material facts must be brought home to him; he must have been in possession of all of the facts and must have acted in the light of such knowledge. This general rule pertains whether the want of knowledge arises from the intentional or unintentional concealment or misrepresentation of the agent, or from his mere innocent inadvertence; and, of course, if the material facts are suppressed or unknown, the ratification is invalid, because founded on mistake or fraud. * *

"The view generally taken by the courts is that the doctrine of constructive knowledge does not obtain in this connection, and the principal

is charged only on full knowledge, and not because he had notice which should have incited him to an inquiry which would have brought such knowledge. A familiar expression used by these courts is that the proof must show that such full knowledge has been brought home to him; and it is not enough that he has information which, if pursued by him, would have led him to full and complete knowledge. The principal need not make inquiries in order that he may know the material facts surrounding the transaction; it is sufficient to defeat the ratification that he does not in fact know them."

Also see Statser v. Chickasaw Lumber Co. (Okl.1958), 327 P.2d, 686; Franco-American Securities, Limited, et al. v. Guillot, (1940), 186 Okl. 302, 97 P.2d 756; and First Nat. Bank v. Alton Mercantile Co., et al., (10 Cir. 1927), 18 F.2d, 213.

▇▇▇ The only act of the defendant which could amount to a ratification under the evidence in this case would be the $3640.75 check. Under the evidence of this case, the defendant did not have knowledge of the fact of the several purchase orders totaling over $15,000.00 which Weller had then executed to the plaintiff without the authority of the defendant. The Court believes and adopts the evidence of the defendant as to the reason why said $3640.75 check was issued as being certainly the most logical conclusion to reach and being fully and most strongly supported by the evidence herein. For the defendant to have ratified the purchase orders sued on herein, or any of them, it would have been necessary that the defendant had knowledge of the same and with this knowledge then ratified the same. The evidence fails to disclose any such knowledge at the time the said $3640.75 check was issued. It is the further finding and conclusion of the Court that the defendant at no time had enough information brought home to it which would bring about ratification through negligent conduct to investigate and take appropriate action to positively disavow the unauthorized transactions. The proposition of negligence would appear to involve a two-way street in this case. In this case the Court believes both principals were acting in good faith, and it appears the plaintiff had as much if not more information to arouse its suspicion about the improper activities of Smith, as did the defendant with reference to Weller. This is also true in point of time.

▇▇▇ In addition it is always necessary in order to have an effective ratification that there shall be an intention on the part of the purported principal to ratify the act or acts in question. See Am.Jur. 2. Section 170, Agency, page 555; Beard v. Herndon (1921), 84 Okl. 142, 203 P. 226. Under the evidence of this case, the Court finds no such intention on the part of the defendant by any act including the $3640.75 check to ratify the purchase orders sued on herein. In these circumstances the Court must reject the application herein of the doctrine of ratification to the effect that the defendant can be said to have ratified the purchase orders involved herein.

With reference to the claim of estoppel asserted herein by the plaintiff in support of its right to recover on the purchase orders, the theory of estoppel is treated in 3 Am.Jur.2d, Section 76, Agency, page 479, which Section provides as follows:

"Estoppel of principal to deny agent's authority.

Although the general statements of the doctrine of apparent authority do not include all the elements of an estoppel in pais, or equitable estoppel, the prerequisites for the application of the doctrine to bind the principal are such that there is no practical difference in effect between them in such respect; and, as applied by the courts, the doctrine of apparent authority is neither broader than nor essentially dissimilar to the estoppel of the principal to deny the agent's authority. Stated in terms of estop-

pel, the rule is that where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than with which he was apparently clothed. This rule has been based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetuate the wrong and cause the loss."

From the foregoing, it is believed that the principle of estoppel as it pertains to this matter is akin to the doctrine of apparent authority which has been treated above. The Court has rejected the doctrine of apparent authority, not only on the absence of evidence showing that the defendant knowingly permitted Weller to exercise purchase order authority or that the defendant held Weller out as possessing such authority, but particularly with reference to a lack of good faith on the part of the plaintiff in dealing with Weller based upon the activities of its local agent, Smith, the intervenor. The same principles and factual findings made by the Court regarding apparent authority would prevent the Court from finding Weller's acts binding against the defendant on the basis of an estoppel. Certainly the defendant should not be estopped to deny Weller's authority to issue the purchase orders involved in the face of a superior knowledge regarding the nature and purpose of the series of transactions on the part of plaintiff through its local agent who obtained the purchase orders. In addition, the Court is of the opinion that the principal party behind this whole unfortunate situation was Smith, agent of the plaintiff.

The Court is dealing with two innocent principals and two misbehaving agents and the result is that the Court must leave the parties more or less as they were, which is to say that the loss can't be placed on the defendant for the reason that the plaintiff, due to the activities of its agent, is not without fault in the matter. The plaintiff either has or can obtain all its materials covered by the purchase orders. The defendant should not be required to remit under the purchase orders.

It is, therefore, the decision of the Court that the plaintiff cannot recover on the purchase orders involved herein, for the reason that they were issued by Weller without authority of any kind from the defendant. Actual authority, either express or implied, is not present in this case under the evidence. Likewise, under the evidence, the Court fails to find apparent authority or ratification or estoppel against the defendant. Accordingly, judgment should be entered herein in favor of the defendant on the Complaint of the plaintiff denying the plaintiff the recovery it seeks herein. It follows as the further decision of the Court that the intervenor Smith is not entitled to recover from the plaintiff any commissions on the purchase orders the plaintiff has brought suit on herein, for the reason that they are not held to bind the defendant and entitle the plaintiff to recover thereon. In connection, however, with the counterclaim of plaintiff against the intervenor Smith, it appears under the stipulation of the parties that the plaintiff has overpaid commissions to Smith and accordingly should have judgment against Smith in the sum of $4,012.87.

Counsel for the defendant will prepare an appropriate journal entry in keeping with the foregoing, submit the same to other counsel for approval as to form and then transmit the same to the Court for signature and entry herein.